# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DERONJA LARUE CLARK,

        Petitioner,

vs.                         Case No.:     3:16-cv-71-J-32JRK
                                                  3:13-cr-133-J-32JRK

UNITED STATES OF AMERICA,

        Respondent.

_____/

## <u>ORDER</u>

This case is before the Court on Petitioner Deronja Larue Clark's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate), as well as Petitioner's three motions for leave to amend (Civ. Doc. 18; Civ. Doc. 20; Civ. Doc. 21).[1] The United States has responded. (Civ. Doc. 7, Response to § 2255 Motion); (Civ. Doc. 22, Response to Motions for Leave to Amend). Petitioner has replied. (Civ. Doc. 11, Reply); (Civ. Doc. 23, Reply Concerning Motions for Leave to Amend). The case is ripe for a decision.

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the motion. <u>See</u> <u>Aron v. United States</u>, 291 F.3d 708, 715 (11th Cir. 2002) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are

---

[1]    Citations to the record in the underlying criminal case, <u>United States vs.</u> <u>Deronja Larue Clark</u>, Case No. 3:13-cr-133-J-32JRK, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:16-cv-71-J-32JRK, will be denoted as "Civ. Doc. __."

affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate and motions for leave to amend are due to be denied.

## I. Background

On July 11, 2013, a grand jury indicted Petitioner and two co-defendants, Randell Glenn Porter and Lashanda Brown Moody, on one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Crim. Doc. 1, Indictment). Petitioner pled guilty to the charge under a written plea agreement. (Crim. Doc. 37, Plea Agreement); (see also Crim. Doc. 85, Change of Plea Transcript).

As part of the factual basis, Petitioner admitted to conspiring with Porter and Moody to ship cocaine to Ft. Lauderdale, Florida and to transport the drugs to Jacksonville, Florida for distribution. (Crim. Doc. 37 at 18-22; Crim. Doc. 85 at 44-50). Petitioner and his co-defendants were arrested on June 17, 2013 after law enforcement agents, following a tip from a confidential source, observed Petitioner and Porter unloading suspicious packages from a boat docked at the Ft. Lauderdale port. (Crim. Doc. 37 at 18-19). The agents watched as Petitioner and Porter carried the packages from a boat named the El Morro to a burgundy Nissan Altima driven by Moody. (Id.). Before the car could drive off the port's property, Customs and Border Protection (CBP) agents attempted a traffic stop, but the car sped away. (Id. at 20). The Nissan drove at a high rate of speed into an intersection, struck another moving car, and

continued to a shopping mall parking lot before coming to a stop. (Id.). According to Moody, Petitioner told her to "go, go, go" and to speed away from the CBP officer when he tried to pull over the car. (Id.).

After the car came to rest, Petitioner fled on foot and ran several blocks into a parking garage. (Id.). FBI Special Agents Steven Burros and Jon Soares apprehended him there following a foot chase. (Id.). Petitioner tried to physically resist the agents as they arrested him. (Id.).

Back at the scene where Moody stopped the car, agents discovered numerous bricks of cocaine in the backpacks and shopping bags that Petitioner and Porter loaded into the vehicle. (Id.). The total weight of the cocaine, including packaging, was 43.5 kilograms, with a street value of $1.5 million. (Id.). After the special agents advised Moody and Porter of their <u>Miranda</u> rights, Moody and Porter stated that the cocaine belonged to Porter and Petitioner, and that Porter and Petitioner had been working on the El Morro since April or May of 2013 unloading drug shipments. (Id. at 20-21). Porter told Special Agent Soares that Petitioner approached him in early June about making some money. (Id. at 21). Porter further stated that on June 3, 2013 and June 10, 2013, he unloaded 16 other packages of cocaine from the El Morro, placed them in a car driven by Moody, and rode the boat back to Jacksonville with Petitioner. (Id. at 21-22).

At the plea colloquy, Petitioner confirmed that the foregoing factual basis was true and accurate (Crim. Doc. 85 at 50), and he admitted each element of the offense (id. at 51-52). Petitioner stated that he pled guilty knowingly and voluntarily, free

from any threats or coercion, and that he was not relying on any promises outside those in the Plea Agreement. (Id. at 52-54). Petitioner also stated that he had received ample time to discuss the case with his attorney and that he was satisfied with counsel's representation. (Id. at 56). Petitioner confirmed it was his final desire to plead guilty. (Id. at 59). The magistrate judge found that Petitioner was alert and intelligent, and that he knowingly and freely pled guilty with competent advice from counsel. (Id. at 60-61). Petitioner agreed with the magistrate judge's findings. (Id. at 61). The magistrate judge recommended that the Court accept Petitioner's guilty plea, and the Court did so. (Crim. Doc. 43, Acceptance of Plea).

At sentencing, the Court determined that Petitioner's total offense level under the United States Sentencing Guidelines was 31 and his Criminal History Category was I, yielding an advisory sentencing range of 108 to 135 months in prison. (Crim. Doc. 86, Sentencing Transcript at 10).[2] Because Petitioner had provided the government substantial assistance, the United States moved for a two-level downward departure under U.S.S.G. § 5K1.1. (Crim. Doc. 58). The Court granted the motion, thereby reducing Petitioner's total offense level to 29 and lowering the sentencing range to 87 to 108 months in prison. (Crim. Doc. 86 at 35). Because Petitioner also qualified for the "safety valve" exception under 18 U.S.C. § 3553(f), the Court was not

---

[2]      The total offense level consisted of a base offense level of 34 because the crime involved 59.5 kilograms of cocaine, a two-level reduction under U.S.S.G. § 2D1.1(b)(17) (2014) (cited as § 2D1.1(b)(16) in the presentence investigation report ("PSR")), a two-level obstruction of justice enhancement under § 3C1.2 for telling Moody to flee law enforcement, and a three-level reduction for acceptance of responsibility under §§ 3E1.1(a) and (b). PSR at 7 ¶¶ 28-37.

bound by the 10-year mandatory minimum sentence imposed under 21 U.S.C. § 841(b)(1)(A). (See Crim. Doc. 86 at 26). When given his turn to speak, Petitioner stated he was "no kingpin drug dealer," but he expressed remorse and accepted responsibility for the crime. (Id. at 21). Petitioner voiced no disagreement with the Guidelines calculation. (See id.). Ultimately, the Court sentenced Petitioner to a term of 94 months in prison (id. at 37), which was within the reduced Guidelines range and 26 months below the mandatory minimum.

The Court entered judgment on January 28, 2015. (Crim. Doc. 73, Judgment). Petitioner filed a notice of appeal less than two weeks later. (Crim. Doc. 75, Notice of Appeal). Petitioner also moved for leave to appeal in forma pauperis (IFP) and for the appointment of appellate counsel. (Crim. Doc. 68, Motion to Appeal IFP). Nine days after filing the Notice of Appeal, however, Petitioner moved to withdraw the Notice of Appeal and the Motion to Appeal IFP. (Crim. Doc. 80, Motion to Withdraw). Petitioner insisted that the Notice of Appeal and the Motion to Appeal IFP were a mistake. (Crim. Doc. 80; Crim. Doc. 80-1). In a handwritten letter supporting the Motion to Withdraw, Petitioner wrote:

> Your honor! Please except [sic] my apology, I did not attend [sic] for my attorney Ricardo to file an appeal, it was a misunderstanding and I would like to withdraw the appeal that was filed by my attorney. I except [sic] my sentence to be just and fare [sic]! I'm sorry for any inconvenience.
>
> Thank you
>
> Deronja Clark

(Crim. Doc. 80-1).

The Court granted the Motion to Withdraw to the extent it deemed the Motion to Appeal IFP withdrawn. (Crim. Doc. 81). On April 15, 2015, the Eleventh Circuit Court of Appeals dismissed the appeal for lack of prosecution. (Crim. Doc. 83, USCA Order).

Assuming Petitioner had 90 days to petition the Supreme Court for certiorari review (which he did not do), Petitioner's conviction and sentence became final on July 14, 2015. See United States v. Sferrezza, 645 F. App'x 399, 497 (6th Cir. 2016) (assuming that where a defendant's direct appeal is dismissed for lack of prosecution, the conviction and sentence become final when the 90-day period for seeking certiorari review expires). Under 28 U.S.C. § 2255(f)(1), Petitioner had one year from that date, or until July 14, 2016, to file a timely motion to vacate. Petitioner filed the Motion to Vacate on January 18, 2016. (Civ. Doc. 1 at 5). Petitioner filed the motions for leave to amend between March 28, 2017 and April 24, 2017. (Civ. Doc. 18 at 7; Civ. Doc. 20 at 3; Civ. Doc. 21 at 5).

## II.    The Motion to Vacate and Motions for Leave to Amend

In his timely-filed Motion to Vacate, Petitioner raises three general claims. The first claim is that the government created a conflict of interest between Petitioner and his attorney by inserting a collateral-review waiver into the Plea Agreement, thereby causing Petitioner to waive any claim of ineffective assistance of counsel. (Civ. Doc. 1 at 1-4). Relatedly, Petitioner argues that his attorney also created a conflict of interest by allowing Petitioner to waive claims of ineffective assistance. (Id.). As such, Petitioner argues the entire Plea Agreement is void. (Id. at 3). Second, Petitioner

argues that counsel gave ineffective assistance by allowing Petitioner to stipulate under the Plea Agreement to being responsible for 16 kilograms of cocaine. (Id. at 4). While the Plea Agreement does not contain such a stipulation, Petitioner is presumably referring to the part of the factual basis where he admitted that the conspiracy involved shipments of 16 additional packages of cocaine between June 3, 2013 and June 10, 2013 (in addition to the 43.5 kilograms found in the car on the day of the arrest). (See Crim. Doc. 37 at 21-22). This resulted in the PSR holding Petitioner accountable for 59.5 kilograms of cocaine rather than 43.5 kilograms, which resulted in a base offense level of 34 instead of 32. See PSR at 7 ¶ 28; U.S.S.G. § 2D1.1(c) (2014). Third, Petitioner argues that counsel gave ineffective assistance by failing to object to the two-level obstruction-of-justice enhancement in the PSR. (Civ. Doc. 1 at 4).

Over a year after filing the Motion to Vacate, between March 28, 2017 and April 24, 2017, Petitioner filed three motions for leave to amend. (Civ. Docs. 18, 20, 21). In the motions, Petitioner raises various new claims regarding the voluntariness of his guilty plea, counsel's pre-plea advice and investigation, and alleged constitutional violations by the arresting officers. The United States responds that each of the motions for leave to amend raise claims that are untimely and do not relate back to the Motion to Vacate. The United States also asserts that the claims lack merit.

### III.    Discussion

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation

of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient

performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## A. The Motion to Vacate

### 1. Whether the Government or Counsel Created a Conflict of Interest By Inserting a Collateral-Review Waiver Into the Plea Agreement

Petitioner's first claim is that the government created a conflict of interest between him and his attorney by inserting a collateral-review waiver into the Plea Agreement, causing Petitioner to waive any claim of ineffective assistance of counsel. Relatedly, Petitioner claims that counsel created a conflict of interest by allowing Petitioner to accept the collateral-review waiver. Petitioner argues that collateral-review waivers are unethical and that the waiver renders his Plea Agreement void.

This claim fails because there is no collateral-review waiver in the Plea Agreement. The only appeal-waiver in Petitioner's Plea Agreement is a waiver of the right to directly appeal the sentence (with certain exceptions). (Crim. Doc. 37 at 13). Petitioner did not waive the right to collateral review or to raise any claims of ineffective assistance of counsel.

Moreover, the Eleventh Circuit has held that sentence-appeal waivers are

enforceable, even when the waiver encompasses claims of ineffective assistance of counsel, so long as the petitioner accepted the waiver knowingly and voluntarily. Williams v. United States, 396 F.3d 1340, 1341-42 (11th Cir. 2005). Here, the record shows that the Court specifically asked Petitioner about the limited sentence-appeal waiver in his Plea Agreement, and that Petitioner freely and knowingly accepted it. (Crim. Doc. 85 at 39-40).

Accordingly, the record refutes Petitioner's claim that the government or his counsel created a conflict of interest by inserting a collateral-review waiver into the Plea Agreement. To the extent Petitioner suggests that the direct appeal waiver renders the Plea Agreement void, the waiver was valid and this claim lacks merit. As such, Petitioner is not entitled to relief on this claim.

### 2. Whether Counsel Was Ineffective for Allowing Petitioner to Admit Responsibility to 16 Additional Kilograms of Cocaine

Petitioner's second claim is that counsel gave ineffective assistance by allowing him to admit responsibility to 16 additional kilograms of cocaine in the Plea Agreement, on top of the 43.5 kilograms found in the car on the day of the arrest. (Civ. Doc. 1 at 4). Petitioner complains that the additional 16 kilograms increased his base offense level by two levels. (Id.).

This claim fails because Petitioner offers no facts explaining why it was unreasonable for counsel to allow Petitioner to admit the truth of the factual basis contained in the Plea Agreement. The only reason Petitioner gives is that the 16 additional kilograms had the effect of increasing his base offense level. However, Petitioner does not deny the truth of the factual basis, including his admission that

the conspiracy involved the shipment of 16 additional packages of cocaine on June 3, 2013 and June 10, 2013. (See Crim. Doc. 37 at 21; Crim. Doc. 85 at 49). The record reflects that Petitioner knowingly and freely admitted the truth of the factual basis after listening to it in its entirety. (Crim. Doc. 85 at 44-54). The record further reflects that before he pled guilty, Petitioner read and understood the entire Plea Agreement, and initialed each page. (Id. at 30-31). "The real problem with [Petitioner's] argument … is that he has not suggested any factual basis upon which counsel could have relied" in advising Petitioner to reject responsibility for the 16 additional kilograms. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992).

"A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." Wilson, 962 F.2d at 997. Petitioner's claim about the 16 additional kilograms is not jurisdictional in nature, nor does it undermine the knowing and voluntary nature of the guilty plea. As such, this claim lacks merit and relief is due to be denied.

### 3. Whether Counsel Gave Ineffective Assistance by Not Objecting to the Two-Level of Obstruction-of-Justice Enhancement

Petitioner's third claim is that counsel gave ineffective assistance by failing to object to the two-level obstruction-of-justice enhancement in the PSR. (Civ. Doc. 1 at 4). Petitioner received the enhancement because he told Moody to "go, go, go" when the CBP officer tried to initiate a traffic stop. According to the PSR, Petitioner's actions "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." PSR at 7 ¶ 32.

Petitioner contends he advised counsel that he did not tell Moody to "go, go, go," but that Moody took it upon herself to flee the CBP officer. (Id.).

This claim fails because the record shows that counsel's decision not to object to the obstruction-of-justice enhancement was reasonable. To begin with, it is doubtful that Petitioner instructed counsel to object to the enhancement in the first place. When given his turn to speak at the sentencing hearing, Petitioner voiced no disagreement with the Guidelines calculation, including the two-level enhancement. Instead, Petitioner expressed remorse for the offense and apologized. (Crim. Doc. 86 at 21). Likewise, after the imposition of the sentence, Petitioner wrote the Court a letter in support of withdrawing the Notice of Appeal and Motion to Appeal IFP, in which he emphasized that he accepted his sentence as just and fair. (Crim. Doc. 80-1). Thus, the record shows that Petitioner had no objection to his sentence.

Nevertheless, even if Petitioner denied to counsel that he told Moody "go, go, go," counsel could have reasonably decided not to dispute the enhancement. One of the co-defendants, Lashanda Moody, advised Special Agent Burros that Petitioner told her to "go, go, go" and to flee the CBP officer when the officer tried to conduct a traffic stop. (Crim. Doc. 37 at 20; Crim. Doc. 85 at 48). Petitioner admitted telling Moody to "go, go, go" as part of the factual basis for his guilty plea. (Id.). Petitioner also admitted to leading Special Agents Burros and Soares on a foot chase and physically resisting arrest, a fact that tends to corroborate Moody's statement that Petitioner told her to flee the traffic stop. (See Crim. Doc. 37 at 20; Crim. Doc. 85 at 47). Had Petitioner's counsel objected to the enhancement on the ground that Petitioner never told Moody

to flee the CBP officer, the government could have used Petitioner's own guilty plea and Moody's testimony to contradict him. Not only that, but had the Court determined that Petitioner frivolously contested the obstruction-of-justice enhancement, doing so might have jeopardized his eligibility for a three-level reduction under U.S.S.G. § 3E1.1. See U.S.S.G. § 3E1.1, Application Note 1(A) (2014) ("a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). In light of these facts, not only would Petitioner have been unlikely to succeed in contesting the obstruction-of-justice enhancement, but he also might have cost himself a three-level reduction under § 3E1.1. As such, counsel's decision not to contest the obstruction-of-justice enhancement was reasonable under the circumstances. See Davis v. United States, 696 F. App'x 431, 434 (11th Cir. 2017) (counsel's decision not to object to a two-level victim enhancement was neither deficient nor prejudicial, where the objection "would have been meritless given that the government could have met its burden of proof merely by pointing to the trial testimony."). Relief on this claim is due to be denied.

## B. The First Motion for Leave to Amend

On March 28, 2017, over a year after filing the Motion to Vacate and 20 months after his conviction and sentence became final, Petitioner filed the "Supplemental Motion to 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence." (Civ. Doc. 18). The Court construed this motion as a First Motion for Leave to Amend. (See Civ. Doc. 19). In the motion, Petitioner claims that the arresting FBI agents assaulted

him, causing a fractured rib. (Civ. Doc. 18 at 1-2); (Civ. Doc. 18-1, Affidavit); (Civ. Doc. 18-2, June 2013 Radiological Report). Petitioner claims that months later, the pain from his injury placed him under such duress that he pled guilty involuntarily. He also alleges that his attorney was ineffective for not investigating the aforementioned assault or bringing it to the Court's attention. (Civ. Doc. 18 at 2, 5). Additionally, Petitioner claims that his attorney misadvised him that he would be sentenced to no more than 46 months in prison if he pled guilty (id. at 3-4); generally failed to investigate the Guidelines or unnamed witnesses (id. at 5-6); and coerced him to plead guilty "by threatening that he would get life in prison" if he did not accept the Plea Agreement (id.).

The United States responds that each of these claims are untimely under 28 U.S.C. § 2255(f), and that they do not relate back to the original Motion to Vacate under Rule 15(c), Federal Rules of Civil Procedure. (Civ. Doc. 22 at 6-9). The United States also contends that granting leave to amend would be futile because the record refutes each of the claims. (See id. at 3-6).

The United States is correct on both points. "Leave to amend a [pleading] is futile when the [pleading] as amended would still be properly dismissed or be immediately subject to summary judgment for the [respondent]." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). While the Court agrees that the new claims are untimely and do not relate back under Rule 15(c), it is equally straightforward to explain why the record refutes each proposed new claim, such that granting leave to amend would be futile.

### 1. Petitioner's claim that he involuntarily pled guilty because of a rib injury

Petitioner claims he was in such excruciating pain, due to a fractured rib he allegedly suffered when the arresting officers "assault[ed]" him, that his guilty plea was not knowing and voluntary. However, when the Court asked Petitioner at the plea colloquy about any medical treatments, Petitioner only stated he was taking ibuprofen for an inflamed shoulder (which apparently stemmed from a shoulder injury that predated his arrest, PSR at 14 ¶ 37), but that he was of sound mind to plead guilty (Crim. Doc. 85 at 14). Petitioner said nothing about any rib injury or debilitating pain. Petitioner affirmed that he understood what he was doing and the importance of the proceedings. (Id. at 14-15). Petitioner stated under oath that he pled guilty knowingly and voluntarily (id. at 52), and not because of any threats or coercion (id. at 52-53) or because of the way anyone else had treated him (id. at 57). The magistrate judge found that Petitioner was alert and intelligent, and that he knowingly and freely pled guilty with competent advice from counsel. (Id. at 60-61). Petitioner stated that he agreed with the magistrate judge's findings. (Id. at 61).

"[T]here is a strong presumption that the statements made during the plea colloquy are true." United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are

contentions that in the face of the record are wholly incredible." <u>Id.</u> at 74. Petitioner's new allegations are incredible given his sworn statements at the plea colloquy, and Petitioner has not carried his "heavy burden to show his statements were false." <u>Winthrop-Redin v. United States</u>, 767 F.3d 1210, 1217 (11th Cir. 2014) (citation omitted). As such, the record refutes this claim.

### 2. Petitioner's claim that counsel was ineffective for failing to investigate

Petitioner asserts counsel failed to investigate the FBI agents' alleged assault, and failed to generally investigate the Guidelines or unnamed witnesses. However, Petitioner stated at the plea colloquy that he had ample time to discuss the case with his lawyer, including the applicability of the Sentencing Guidelines. (Crim. Doc. 85 at 21, 56). Petitioner stated he was satisfied with counsel's representation. (<u>Id.</u> at 56). Petitioner expressed no complaint about the lack of adequate investigation. Moreover, during the sentencing hearing Petitioner apologized and expressed remorse for his offense, but did not complain about counsel's performance. (Crim. Doc. 86 at 21). Even after the sentencing hearing, Petitioner sought to withdraw his Notice of Appeal and emphasized that he accepted his sentence as just and fair. (Crim. Doc. 80-1). As such, the record refutes the claim that Petitioner was dissatisfied with counsel's investigation.

Additionally, by entering a knowing and voluntary guilty plea "a defendant waives any ineffective assistance of counsel claim as it involved pre-plea issues." <u>Edwards v. United States</u>, No. 17–10322–D, 2018 WL 3586866, at *1 (11th Cir. Jun. 4, 2018) (Jordan, J., denying certificate of appealability) (citing <u>Wilson</u>, 962 F.2d at

997). Because Petitioner entered a knowing and voluntary guilty plea (see Crim. Doc. 85 at 16-61), he waived any claim that counsel's pre-plea investigation was deficient.

### 3. Petitioner's Claim that Counsel Coerced Him to Plead Guilty With Threats and False Assurances

Petitioner contends that counsel promised him he would be sentenced to no more than 46 months in prison if he pled guilty. However, Petitioner said at the plea colloquy that he was not relying on any promise outside of the Plea Agreement, including any promise of a light sentence. (Crim. Doc. 85 at 52-54). The Court also warned Petitioner that his ultimate sentence could be more severe than any sentence estimated by his attorney, but that he would still be bound by his Plea Agreement. (Id. at 21-23). Petitioner stated that he understood. (Id. at 23). Petitioner also contends that counsel threatened him with a life sentence if he went to trial. However, Petitioner said at the plea colloquy that he was pleading guilty free from any threats or coercion. (Id. at 52-53). As such, the record refutes any notion that Petitioner pled guilty because he relied on the promise of a light sentence or because counsel threatened him with a life sentence if he went to trial.

Because the record refutes each of the proposed claims, such that the claims "would still be properly dismissed or be immediately subject to summary judgment for the [respondent]," Cockrell, 510 F.3d at 1310, the First Motion for Leave to Amend is due to be denied.

### C. The Second and Third Motions for Leave to Amend

On April 24, 2017, Petitioner simultaneously filed the Second and Third Motions for Leave to Amend. (Civ. Doc. 20; Civ. Doc. 21). Petitioner does not raise any

new claims in the Second Motion for Leave to Amend itself. Instead, Petitioner generally states that with the assistance of a jailhouse lawyer, he has reached a better understanding of the facts of his case. In the Third Motion for Leave to Amend, Petitioner claims that the arresting officers obtained incriminating evidence from him by assaulting him and interrogating him without advising him of his <u>Miranda</u> rights. (Civ. Doc. 21 at 2-3). Petitioner asserts that the officers' conduct violated his rights under the Fourth, Fifth, and Sixth Amendments. Petitioner also claims that counsel was ineffective because he failed to investigate the purported constitutional violations or move to suppress the evidence.

As with the First Motion for Leave to Amend, the United States responds that these claims are untimely and do not relate back to the Motion to Vacate. (Civ. Doc. 22 at 6-9). The United States also asserts that the claims lack merit. (<u>See</u> <u>id.</u> at 3-6).

The Court agrees that the new claims are untimely under 28 U.S.C. § 2255(f) and do not relate back to the Motion to Vacate under Rule 15(c). However, it is equally straightforward to explain why the proposed claims are meritless, such that leave to amend would be futile. When Petitioner entered a knowing and voluntary guilty plea, he waived any challenge to the manner in which the government obtained any evidence, statement, or confession. (Crim. Doc. 85 at 19-20). <u>See also</u> <u>Wilson</u>, 962 F.2d at 997 (a defendant waives any non-jurisdictional challenges when he enters a knowing and voluntary guilty plea); <u>United States v. McCoy</u>, 477 F.2d 550, 551 (5th Cir. 1973) (district court's refusal to suppress evidence is nonjurisdictional and is

waived by a guilty plea).[3] Likewise, Petitioner's knowing and voluntary guilty plea waived any claim that counsel was ineffective for not moving to suppress evidence. Wilson, 962 F.2d at 997-98; see also Bullard v. Warden, Jenkins Corr. Ctr., 610 F. App'x 821, 824 (11th Cir. 2015) (petitioner waived claim that counsel was ineffective for not filing a motion to suppress where petitioner did not allege that counsel's failure rendered his guilty plea involuntary). The claims in the Third Motion for Leave to Amend would therefore be subject to summary dismissal, such that leave to amend would be futile.

Accordingly, having considered each argument raised in the Motion to Vacate and the motions for leave to amend, and finding each claim to lack merit, it is hereby

**ORDERED:**

1. Petitioner Deronja Larue Clark's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Petitioner's motions for leave to amend (Civ. Docs. 18, 20, 21) are **DENIED**.

3. Petitioner's Motion to Request Judgment (Civ. Doc. 27) is **GRANTED** to the extent that the Court will enter judgment shortly after entry of this Order.

4. Petitioner's "Special Motion" for miscellaneous relief (Civ. Doc. 28) is **DENIED**. The motion is vague and references Petitioner's status as a "debtor," not as a movant under 28 U.S.C. § 2255. Thus, it is not relevant to § 2255 relief.

---

[3] Decisions of the former Fifth Circuit Court of Appeals that were handed down before the close of business on September 30, 1981 are binding in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

5. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of December, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner